Filed 7/6/26  Pawar v. Wholesale 209 CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| KAMAL JEET SINGH PAWAR, | C102231 |
| Plaintiff and Appellant, | |
| | (Super. Ct. No. |
| v. | STKCVUPI20210010637) |
| WHOLESALE 209, LLC, et al., | |
| Defendants and Respondents. | |

Plaintiff Kamal Jeet Singh Pawar (Pawar) sued defendants Naveed Asghar (Asghar) and Wholesale 209, LLC, doing business as Tires Direct (Tires Direct), for civil assault and battery, negligence, and other tort causes of action.  A jury returned a split special verdict for Pawar on all causes of action against Asghar, and against Pawar on all causes of action against Tires Direct.  The jury awarded compensatory damages against Asghar in the amount of $6,000 and punitive damages in the amount of $100,000.  Pawar, proceeding in propria persona, appeals from the judgment, arguing, inter alia, the trial court erred in excluding his proposed demonstrative exhibit, an instrument said to have been used to strike him.  Finding no error, we will affirm the judgment.

1

# I. BACKGROUND

## A. *The Altercation*

Pawar is a commercial truck driver.  Asghar owns and operates Tires Direct, a regional chain that sells tires and rims.  Tires Direct's principal place of business is a wholesale warehouse in Stockton, which is where Asghar maintains his office.

Pawar and Asghar know each other professionally.  They exchanged phone calls and text messages over the course of two weeks in August 2019.  As part of those communications, Pawar proposed entering into a business arrangement with Asghar.  Asghar was not interested in going into business with Pawar and told him as much, using profanity in the process.

Pawar appeared unexpectedly inside the warehouse on August 31, 2019.  Asghar ordered Pawar to leave at once.  Pawar made no move to do so.  Asghar grabbed the nearest object—a metal rod—which had been sitting in a pile of similar objects on the floor.  He ordered Pawar to leave again.  When Pawar refused, Asghar struck him twice with the metal rod, once on the forearm and once on the ribcage.  Pawar left the warehouse and went outside.  Asghar followed Pawar, still brandishing the metal rod and ordering him to leave.  Pawar eventually got into his car and drove away.

## B. *The Trial Court Proceedings*

Pawar brought suit against Asghar and Tires Direct.  The operative second amended complaint asserts causes of action for negligence, civil assault, civil battery, intentional infliction of emotional distress, ratification by employer, negligent hiring or retention of unfit employee, negligent supervision of employee, and premises liability.  Asghar and Tires Direct answered the second amended complaint by generally denying the allegations and asserting various affirmative defenses.  The matter was tried to a jury in July and August 2024.

1. *Pawar's Proposed Exhibit 47*

An Evidence Code section 402 hearing began on the afternoon of August 1, 2024.[1] The hearing paused for jury selection and Pawar's opening statement and resumed after the jury was excused for the day. Our record does not include a reporter's transcript of the first day of the hearing.

The hearing resumed the next morning, before the jury was brought into the courtroom. Our record begins with the continued cross-examination of Pawar by Asghar's counsel. The continued cross-examination focused on Pawar's proposed Exhibit 47, which was described as a "metal tool/instrument" or "rod," that may have been "part of a machine." Pawar testified that proposed Exhibit 47 was the object Asghar used to strike him. However, Pawar acknowledged that he never held the object Asghar used to strike him, did not see the machine the object may have come from, and did not disclose the object in discovery. Our incomplete record does not reveal how Pawar came to have proposed Exhibit 47.

Pawar's trial counsel argued proposed Exhibit 47 was the same or similar to the object used to strike his client. Pawar's counsel also represented that a photograph of the object had been produced in discovery at some point. Asghar's counsel responded that he had never seen proposed Exhibit 47 before, and even assuming a photograph had been produced, it would not have disclosed the weight or size of the object. Tires Direct's counsel argued Pawar's testimony was speculative, inasmuch as he did not hold proposed Exhibit 47 or see where it came from. Tires Direct's counsel also argued Pawar likely did not see the object, given the speed with which events unfolded.

The trial court excluded proposed Exhibit 47 for lack of foundation. The trial court explained that Pawar had not shown that proposed Exhibit 47 was the same or similar to the object used by Asghar, and the probative value of the exhibit was

---

[1] Undesignated statutory references are to the Evidence Code.

substantially outweighed by the probability that the proposed exhibit would create a substantial danger of undue prejudice, which would confuse and mislead the jury. The jury was then brought back into the courtroom, and counsel for Asghar and Tires Direct gave their opening statements.

### 2. Asghar's Opening Statement

As part of his opening statement, Asghar's counsel explained that jurors would be shown surveillance video from outside the warehouse. Asghar's counsel elaborated that the video would "hopefully" allow jurors to make out the object used to strike Pawar, which he described as "an aluminum bar" and "very lightweight." Asghar's counsel also indicated that jurors would see Pawar leaving the warehouse uninjured. Pawar did not object to Asghar's counsel's characterization of the anticipated video evidence.

Asghar's counsel then turned to what he thought the medical evidence would show. He explained that Pawar had gone to the emergency room after the altercation and was found to have two contusions, but no broken bones. Asghar's counsel added that Pawar visited his personal physician soon thereafter, and was again found to have contusions, but no other injuries. Asghar's counsel then opined that Pawar suffered from chronic anxiety, and his injuries were attributable to stress, rather than the altercation. Pawar did not object to this part of Asghar's opening statement either.

Turning to Pawar's claim for damages from loss of income, Asghar's counsel recounted that Pawar got a job in February 2020, some five months after the altercation, but was terminated four months later. Pawar's counsel objected and an off-the-record bench conference was held. Asghar's counsel then resumed his opening statement, stating, "So Mr. Pawar loses that job one way or another." There were no further objections to Asghar's opening statement, and no objections whatsoever to Tires Direct's opening statement.

4

### 3. *Defense Exhibit 500*

After opening statements, the jury left the courtroom, and the trial court conducted another section 402 hearing. The hearing concerned defense Exhibit 500, which was described by Asghar on direct examination as "a chrome display rack" from Tires Direct's warehouse. According to Asghar, Exhibit 500 was "the exact object" he used to strike Pawar.

On cross-examination, Asghar explained that Tires Direct uses display racks to hold tire rims. He indicated that the display rack marked as Exhibit 500 had been disassembled at the time of the altercation, and its component parts deposited in the corner of the warehouse. Later, Asghar clarified that Exhibit 500 was a "rod," which was part of the display rack.[2]

After hearing Asghar's testimony, the trial court reviewed the surveillance video from outside the warehouse. The trial court also examined a screenshot from the surveillance video. The trial court then heard testimony from defense witness Shahid Ali, Asghar's brother-in-law.

Ali testified that he works for Tires Direct and was at the warehouse at the time of the altercation. Ali recalled that Asghar picked up a piece of chrome tubing, which had broken off a display rack and was lying on top of it. Ali said the object used to strike Pawar was similar to the object marked as Exhibit 500. After the altercation, Ali said Asghar threw the object away somewhere inside the warehouse. On cross-examination, Ali clarified that Exhibit 500 was not the specific object used to strike Pawar.

Asghar's counsel argued that Exhibit 500 was relevant and should be admitted because it was the same or similar to the object used to strike Pawar. Pawar's counsel

---

[2] The reporter's transcript says that Pawar's counsel asked Asghar about "Exhibit 501." However, the discussion up to that point was about Exhibit 500, and Exhibit 501 is elsewhere described in the reporter's transcript as a screenshot of one or more text messages.

responded that Exhibit 500 should be excluded for lack of foundation because Asghar failed to show that the exhibit was "the actual instrument that was used on the date of the incident."

The trial court found sufficient foundation had been laid to show that Exhibit 500 was the same or similar to the object used in the altercation, and its probative value substantially outweighed any risk of prejudice or confusion of the jury. Accordingly, the trial court admitted Exhibit 500. The jury was then brought back into the courtroom, and Pawar's counsel called his first witness (Asghar).

### 4. Jury Trial and Verdict

The trial consumed 13 court days. Fifteen witnesses were called. Our record includes reporters' transcripts for only three court days and three witnesses (not including the witnesses called at the section 402 hearings). Consequently, the record offers an exceedingly limited view of the trial court proceedings. This will become important momentarily.

One way or another, the matter was eventually given to the jury, which found for Tires Direct and against Pawar on all causes of action. The jury found for Pawar and against Asghar on the causes of action for civil assault and battery, negligence, and intentional infliction of emotional distress. However, the jury also found comparative fault on Pawar's part. The jury awarded compensatory damages in the amount of $6,000 and punitive damages in the amount of $100,000. The trial court entered judgment reflecting these amounts and Pawar timely appealed.

## II. DISCUSSION

Pawar advances four arguments on appeal.[3]  First, he argues the trial court abused its discretion by excluding proposed Exhibit 47 and admitting Exhibit 500.  Second, he argues the trial court erred in allowing Asghar's counsel to "narrate" the surveillance video and offer "medical opinions" in his opening statement.  Third, Pawar argues the trial court erred in allowing Asghar to attribute his emotional distress to unrelated work stressors, rather than the altercation.  Finally, Pawar argues the foregoing alleged errors combined to deprive him of a fair trial.  None of these arguments have merit.

### A.     General Principles

It is "a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 (*Jameson*); see also *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [" 'A judgment or order of the lower court is *presumed correct*.  All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown' "].)

Appellants have the burden of overcoming the presumption of correctness.  To do so, they must demonstrate that the trial court committed reversable error, which means they must designate " 'an adequate record.' " (*Jameson, supra*, 5 Cal.5th at p. 609; see also *Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435 (*Osgood*) ["It is the appellant's affirmative duty to show error by an adequate record"].)  Without an adequate record, error cannot be demonstrated, and the presumption of correctness requires that the issue

---

[3] Pawar raises a host of new arguments in his reply brief.  We do not consider arguments raised for the first time in a reply brief.  (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 157 (*United Grand*).)

be resolved against appellants.  (*Jameson, supra*, at p. 609.)  Appellants must also show where in the record any error occurred.  (See Cal. Rules of Court, rule 8.204(a)(1)(C) [requiring parties to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].)

In addition to an adequate record, appellants "must present meaningful legal analysis supported by citations to authority and citations to the facts in the record that support the claim of error."  (*In re S.C.* (2006) 138 Cal.App.4th 396, 408; see also *WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894.)  Appellate courts are " 'not required to search the record … seeking error,' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246) and they are "not bound to develop appellants' arguments for them" (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830).  Consequently, " ' "[a]ny statement in a brief concerning matters in the appellate record … must be supported by a citation to the record." ' "  (*Wentworth v. Regents of University of California* (2024) 105 Cal.App.5th 580, 595; see also *WFG National Title Ins. Co., supra*, at p. 894 ["we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record"].)  In addition, " ' "[c]ontentions supported neither by argument nor by citation of authority are deemed to be without foundation and to have been abandoned." ' "  (*In re Phoenix* (2009) 47 Cal.4th 835, 845; see also *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [a "conclusory presentation, without pertinent argument or an attempt to apply the law to the circumstances of this case, is inadequate," and the reviewing court will treat the issue as abandoned"].)  Put another way, "conclusory claims of error will fail."  (*In re S.C., supra*, at p. 408.)

These principles apply even when parties represent themselves, as Pawar does here.  (See *Denny v. Arntz* (2020) 55 Cal.App.5th 914, 920 ["We treat a party who represents himself on appeal as we would any other party or attorney"].)  Thus, Pawar is " 'entitled to the same, but no greater, consideration than other litigants and attorneys.' "

(*Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520; see also *Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 31 [" 'as is the case with attorneys, pro. per. litigants must follow correct rules of procedure' "].)

B.    *Challenges to Evidentiary Rulings*

Pawar argues the trial court abused its discretion by excluding proposed Exhibit 47 and admitting defense Exhibit 500.  Pawar's argument encompasses two assignments of error, one challenging the exclusion of proposed Exhibit 47 and another challenging the admission of defense Exhibit 500.  We need not reach the first of these, as Pawar has failed to provide an adequate record of the relevant section 402 hearing.

As mentioned, our record begins on the second day of the first hearing, in the middle of Pawar's continued cross-examination.  Consequently, we do not have a complete record of the hearing and cannot know whether Pawar laid an adequate foundation for proposed Exhibit 47 or demonstrated the proffered object was more probative than prejudicial.  On the limited record before us, we must presume the full transcript would have supported the trial court's ruling.  (See *Construction Financial v. Perlite Plastering Co.* (1997) 53 Cal.App.4th 170, 179 ["If any matters could have been presented to the court below which would have supported its findings and judgment, it will be presumed that such matters were presented"].)  Accordingly, we reject Pawar's challenge to the trial court's exclusion of proposed Exhibit 47.  That leaves Exhibit 500.

We review the trial court's evidentiary rulings for abuse of discretion.  (*Adoption of X.D.* (2025) 114 Cal.App.5th 812, 831.)  We will not disturb such rulings " 'except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Pineda* (2022) 13 Cal.5th 186, 222; *Alliance San Diego v. California Taxpayers Action Network* (2025) 114 Cal.App.5th 1121, 1151.)  "An ' "erroneous evidentiary ruling requires reversal only if 'there is a reasonable probability that a result more favorable to the

9

appealing party would have been reached in the absence of the error.' " ' " (*K.M. v. Grossmont Union High School Dist.* (2022) 84 Cal.App.5th 717, 760.)

After reviewing the surveillance video and screenshot, and hearing from Asghar and Ali, the trial court found an adequate foundation had been laid to justify admitting Exhibit 500, and its probative value substantially outweighed any risk of prejudice or confusion of the jury. Pawar does not make any attempt to explain why either determination constituted an abuse of discretion. While Pawar suggests the trial court could not reasonably admit Exhibit 500 and exclude proposed Exhibit 47, he does not argue that one was necessarily tied to the other, and our record does not give us any reason to view them that way. That the trial court excluded proposed Exhibit 47 does not mean the court was also obliged to exclude Exhibit 500. Neither does it mean the trial court somehow took sides on the question of which object was used to strike Pawar, as he suggests.[4] On the record before us, we conclude the trial court reasonably admitted Exhibit 500 and excluded proposed Exhibit 47. No abuse of discretion appears.

C.      *Challenges to Asghar's Opening Statement*

Pawar next argues the trial court erred by allowing Asghar's counsel to "narrate" the surveillance video and offer "medical opinions" in his opening statement.[5] According to Pawar, Asghar's argument included "subjective interpretations of the video" and "improper medical speculation" that "invited the jury to accept counsel's interpretations as evidence." Pawar's argument fails from the start.

For one thing, Pawar forfeited the challenge to Asghar's opening statement by failing to object in the trial court. (See, e.g., *Horn v. Atchison, Topeka & Santa Fe*

---

[4] Pawar argues the trial court "endorsed [Exhibit 500] as 'the real rod,' " but that characterization does not appear anywhere in our record.

[5] For clarity, Asghar's counsel merely foreshadowed the surveillance video during his opening statement. The video was not played for the jury at that time.

*Railway Co.* (1964) 61 Cal.2d 602, 610 ["Generally a claim of misconduct [in opening or closing arguments] is entitled to no consideration on appeal unless the record shows a timely and proper objection and a request that the jury be admonished"]; see also *Brokopp v. Ford Motor Co.* (1977) 71 Cal.App.3d 841, 860 ["A party is foreclosed from complaining on appeal of misconduct during arguments to the jury where his counsel sat silently back during the arguments, allowed the alleged improprieties to accumulate without objection, and simply made a motion for a mistrial at the conclusion of the argument"].) Pawar made no objection to any argument about what the surveillance video or medical evidence would show and so forfeited the issue on appeal.

For another thing, Pawar presents no argument or authority to support the challenge to Asghar's opening statement. " 'The purpose of the opening statement is to inform the jury in a general way of the nature of the action and defense, to advise them of the facts relied on by the party to make up his right of action or defense, to define the nature of the questions involved, and advise them of the issues to be tried and the facts intended to be proved, so as to enable them to understand the case to be tried.' " (*Williams v. Goodman* (1963) 214 Cal.App.2d 856, 869; see also *People v. Dennis* (1998) 17 Cal.4th 468, 518 [the purpose of an opening statement "is not only to inform the jury of the expected evidence, but also to prepare the jurors to follow the evidence and more readily discern its materiality, force, and meaning"].) So far as Pawar's brief and record citations reveal, Asghar's counsel previewed what he thought the evidence would show, and thus stayed within the bounds of acceptable argument.

Finally, though Pawar does not suggest that Asghar's counsel mischaracterized the evidence, we would have no way of determining that for ourselves, as again, we have only a partial record of the trial court proceedings. We therefore assume that Asghar's counsel fairly characterized the expected evidence. (*Hotels Nevada, LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348 [" 'Failure to provide an adequate record on an issue requires that the issue be resolved against appellant' "]; see also *Osgood,*

11

*supra*, 127 Cal.App.4th at p. 435 [if an appellant asserts an error on only a partial record, and the missing part of the record could provide grounds for affirming the judgment, the appellate court will affirm the judgment].)

D.      *Challenge to Argument Regarding "Unrelated Emotional Issues"*

Pawar next argues the trial court erred by allowing "Respondent" (presumably Asghar) to attribute his emotional distress to "unrelated workplace issues reflected in medical records, rather than to the assault at issue." This argument also fails.

Pawar directs our attention to 10 pages of the reporter's transcript, which covers the end of the first section 402 hearing and the beginning of Asghar's opening statement. Most of the cited pages have nothing at all to do with "unrelated workplace issues." Only a portion of Asghar's opening statement is even arguably relevant.

As mentioned, Asghar's counsel opined without objection that Pawar suffers from chronic anxiety, and his injuries were attributable to stress rather than the altercation. Later, in part of the opening statement not cited in the opening brief, Asghar's counsel noted Pawar had been terminated from his job after the altercation. That observation drew an objection, and a discussion was held off the record. After that discussion, Asghar's counsel reiterated, without further objection, that Pawar had been terminated.

It is not clear whether Pawar means to challenge the trial court's resolution of that single, unspecified objection or something else. Regardless, it is not our role as an appellate court to independently review the record for error, and to construct arguments for appellants that would require reversal of the judgment. (*United Grand, supra*, 36 Cal.App.5th at p. 153.) Pawar fails to explain the basis for the assignment of error, and we will not attempt to construct an argument on his behalf.

E.      *Cumulative Error*

Finally, Pawar argues the foregoing alleged errors amount to cumulative error, requiring reversal. However, Pawar has failed to identify any error in the trial court's

12

handling of the matter.  Consequently, there is nothing to cumulate.  (*Evans v. Hood Corp.* (2016) 5 Cal.App.5th 1022, 1053-1054.)

## III.  DISPOSITION

The judgment is affirmed.  Respondents are entitled to their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


                                            /S/
                                         RENNER, J.

We concur:


/S/
EARL, P. J.


/S/
WISEMAN, J.[*]

---

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.